WOODS v. MacNEIL BROS. CO.

Civ. A. No. 7455.

United States District Court,
D. Massachusetts.

Nov. 8, 1948.

Roy M. Fitzmorris, Chief Rent Litigation Unit, Office of Rent Control, and Edmund M. Sweeney, both of Boston, Mass., for plaintiff.

Angus M. MacNeil, of Boston, Mass, for defendant.

FORD, District Judge.

This is an action by the Housing Expediter of the Office of the Housing Expediter, brought under Sec. 204(a) of the Housing and Rent Act of 1947, P.L. 129, 80th Cong., 50 U.S.C.A.Appendix, § 1894 (a), for a preliminary and permanent injunction and a mandatory order for restitution pursuant to Sec. 206(b) of the same Act, 50 U.S.C.A.Appendix, § 1896(b).

The case has been argued on an agreed statement of facts which was submitted by the parties. The facts are as follows:

The defendant corporation is the owner of the premises at 10–12 Garrison Avenue, Somerville, Massachusetts, which it purchased July 1, 1946. At that time and continuously to the time of the present suit, the premises consisted of a wooden frame building containing six apartments, each comprised of three rooms and bath. Under the registration statement in effect at the date of purchase the maximum rent for the first floor left apartment in this building was $20.00 a month. The equipment furnished was running water, hot water, flush toilet, bathroom, heating and cooking stove. The services furnished were cold water, garbage disposal, painting and decorating, interior and exterior repairs.

This first floor left apartment was vacant from November, 1946, until January 25, 1947, when John C. Hawver entered into occupancy as a tenant at a rental of $18.00 per week. The apartment was then rented for the first time as a furnished apartment, and the defendant landlord agreed to furnish heat from a central heating system to be installed.

Beginning on January 20, 1947, the boiler and piping for this heating system were installed by employees of the defendant-landlord. The oil burner was installed on February 6 and 7, the system was put into service on February 10, and the work was completed with the installation of controls for the oil burner on February 28, 1947. In the same apartment, between November 1, 1946 and February 28, 1947, the defendant-landlord replaced old bathroom fixtures with modern fixtures, replaced old electric fixtures with modern ones, installed wall outlets and replaced the old cooking stove with a modern combination gas-oil stove. The apartment was fully repainted and repapered.

Since this apartment was first rented furnished and the central heating equipment added, no new registration statement was filed within thirty days after this rental as required by the regulations then in force. October 15, 1946 Regulations, Sec. 4(j). And no new registration was ever filed. On August 4, 1947, on the basis of information received from the tenant, the Area Rent Director, now acting in accordance with Rent Regulations 5(d) under the 1947 Act (issued July 1, 1947), issued an order finding that the rent for this apartment was $18.00 per week, and stating that the effect of the order was to establish the rent for those housing accommodations on January 25, 1947, the first time the apartment was rented furnished, as the maximum rent. Regulations, October 15, 1946, Sec. 4(j). The order listed the equipment as furniture, cooking stove, running water, flush toilet, hot water, bathroom, refrigerator, central heating shared, electricity installed; the services as heat, cold water, painting and decorating, interior repairs, exterior repairs.

On September 8, 1947, defendant-landlord protested this action (in a letter to the Area Rent Director) on the ground that the housing accommodations had been made available after January 30, 1947 and were thus decontrolled. No other protest was filed.

After notice, on November 13, 1947, of a contemplated rent decrease, defendant, by a letter of November 14, 1947 to the Rental Advisory Board, Office of the Housing Expediter, protested this proposed decrease and requested a hearing.

On November 21, the Area Rent Director by order in accordance with Sec. 5(c) (1) and 5(d) of the 1947 Act regulations decreased the maximum rent of the apartment from $18.00 per week to $13.50 per week, effective from July 1, 1947, and directed a refund within thirty days of rents collected in excess of $13.50 per week from the effective date.

From July 1, 1947 to September 15, 1947, defendant demanded and received from John C. Hawver rent for the first floor left apartment at the rate of $18.00 per week. From October 1, 1947 to November 26, 1947, defendant demanded and received rent for the same apartment fom Walter J. Pingree at the same rate of $18.00 per week. Defendant has not refunded any rent to either of said tenants.

Since it is admitted that defendant has collected rent in excess of the maximum rent fixed by the order of the Area Rent Director and has failed to refund the excess amounts thus collected, the only issue in the case arises from the claim of the defendant that the apartment in question was not controlled housing accommodations under the Housing and Rent Act of 1947, P.L. 129, 80th Cong., 50 U.S.C.A. Appendix, §§ 1881–1884, 1891–1902, hereinafter called the Act. Pertinent provisions of the Act are set forth in the margin.[1]

The sole question presented here is whether the changes made in the apartment subsequent to February 1, 1947—installation of a central heating system, replacement of bathroom and electric fixtures, installation of wall outlets, and replacement of the cooking stove with a modern gas-oil stove—bring the apartment in question within the scope of the exemption granted in the Act, Sec. 202(c) (3), to "housing accommodations the construction of which was completed on or after February 1, 1947". I hold that they do not.

Using the words in their common and ordinary meaning, we cannot say that the work done here resulted in the completion of the construction of a housing accommodation. There was no structural change made in the building. Before and after the work was done, it was composed of the same number of apartments, each with the same number of rooms. The number of housing accommodations available was exactly the same, though presumably the existing accommodations had been improved and made more desirable. But the mere providing of additional facilities to improve existing accommodations does not create new accommodations. Gilbert v. Thierry, D.C., 58 F.Supp. 235, affirmed sub nomine Thierry v. Gilbert, 1 Cir., 147 F.2d 603. Nor can it be said that a facility which is newly provided, e.g., the central heating plant here, where none previously existed, is itself the housing facility which was constructed. The definition in the Act, Sec. 202(b), agrees with the ordinary sense of the words in requiring that housing accommodations should be basically a building or something resembling a building, of such a nature that it can be lived in. Furniture, services, and facilities are not in themselves, housing accommodations. They are included in the definition only insofar as they are connected with the use and occupancy of the basic structure and are taken together with it

---

[1] Title II. Sec. 202. "As used in this title—

\* \* \* \* \* \*

"(b) The term "housing accommodations" means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes (including houses, apartments, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property.

"(c) The term "controlled housing accommodations" means housing accommodations in any defense-rental area, except that it does not include—

\* \* \* \* \* \*

"(3) any housing accommodations (A) the construction of which was completed on or after February 1, 1947, or which are additional housing accommodations created by conversion on or after February 1, 1947, \* \* \* or (B) which at no time during the period February 1, 1945, to January 31, 1947, both dates inclusive, were rented (other than to members of the immediate family of the occupant) as housing accommodations."

to constitute the complete housing accommodations.

Defendant contends that the agency's interpretation of what is meant by "completion of construction" supports its position; the plaintiff disagrees. The Rent Regulations under the Housing and Rent Act of 1947, Office of the Housing Expediter, July 1, 1947, 24 C.F.R. 1947 Supp. 825.1(b) (8), reads " * * * construction of housing accommodations is considered completed on the date the last material, fixture or equipment is incorporated into the structure provided the dwelling is suitable for occupancy at that time." And compare Interpretation 2, Rent Regulations under the Housing and Rent Act of 1947, August 25, 1948, 13 F.R. 5001, IV, 2: " * * * construction is deemed to be 'completed' when the dwelling is first suitable for occupancy and all services and utility connections have been made, * * *."

It is argued that the regulations do not contemplate that a dwelling is completed until all services and utility connections have been made. But this regulation clearly speaks only of such connections as must be made to render the dwelling suitable for occupancy; and in this sense the accommodations here in question had been completed long before February 1, 1947, whenever the apartment had been made ready for use with such facilities as were originally provided for it. To adopt the defendant's view of this regulation would require a holding that no dwelling is completed so long as there remains any conceivable utility which might ultimately be connected. Such an impracticable interpretation cannot be correct. In fact, this would mean that no apartment would ever be completed.

A consideration of the purposes of the Act requires us to reject the contention of the defendant. The Act is an attempt to provide "reasonable stability in the general level of rents" (Sec. 201) during a period when the number of available dwelling units is so far less than the number of family groups desiring separate housing accommodations as to create an inflationary pressure which would tend to force rents to undesirably high levels. For this purpose the Act creates a system for the imposing of maximum rentals. In the light of this purpose, the exemption from these restrictions granted by Sec. 202(c)(3) seems clearly given to encouraging the creation of a greater number of dwelling units available for rental and thus lessen the pressure which makes the restrictions generally necessary. It offers an inducement to owners of already existing facilities, not recently rented, to put them on the rental market. It offers inducement to the creation by conversion of existing structure of additional housing accommodations. It is in accordance with the other provisions of this section to hold that the construction of housing accommodations, which is placed first of all, is the construction of new accommodations, and not the improvement of existing accommodations which adds nothing to the number of dwelling units available. On the other hand, to hold that construction includes any substantial change or improvement in existing facilities would endanger the whole system of rent controls set up under the statute by making it possible for any owner to secure freedom from all rent restrictions merely by providing after February 1, 1947 some additional facility, the cost of which he could soon recoup from the increased rentals he could thereafter collect. It is true that improvement in existing housing units is an objective which Congress might also wish to further. But existing regulations make ample provisions for upward revisions of maximum rents in case of such improvements. Regulations, Rent Act of 1947, July 1, 1947, 24 C.F.R. 1947 Supp. 825.5(a) (3). It would require more explicit language than that contained in the Act to convince me that Congress intended to encourage improvements to the extent of replacing existing provisions for adjustment with a complete exemption of the premises, where the improvements were made after February 1, 1947, from all the provisions of the Act by decontrolling them, especially when the operaion of such an exemption could result in the removal of practically all rental restrictions by a method which did nothing to remedy the basic conditions which made such restrictions seem necessary in the first place.

924

Moreover, it is significant that the Act, after providing for cases of construction, speaks next of additional housing accommodations created by conversion. But if construction was intended to include such things as the installation of heating plants, or electric or plumbing fixtures, then it would certainly have included the more basic structural changes involved, for example, in converting what was a six-room apartment into two three-room apartments. In that case, the provision for accommodations created by conversion would seem superfluous. However, both provisions can be given their full meaning if we consider "construction" as referring only to entirely new dwelling units and "conversion" as referring to such changes in existing buildings as provide additional housing units which did not exist before.

The conclusion therefore is that the changes made by the defendant in the apartment in question, completed after February 1, 1947, did not constitute construction of housing accommodations within the meaning of Sec. 202(c) (3) (A) of the Housing and Rent Act of 1947.

Judgment for the plaintiff in accordance with prayers 1 and 2 of the complaint, with costs. Form of judgment will be submitted for approval.