Echon, Admrx., *v.* Pennsylvania Railroad Company, Appellant.

Argued October 6; 1950. Before DREW, C. J. STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Bruce R. Martin,* with him *Dalzell, McFall, Pringle & Bredin,* for appellant.

*John E. Evans, Jr.,* with him *Evans, Ivory & Evans* and *Herbert Jacobson,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 13, 1950:

Frances Echon instituted this action in trespass against Pennsylvania Railroad Company, appellant, under the Survival Act of 1937 and under the Wrongful Death Statute.[1] Decedent was killed when in the process of traversing appellant's tracks over a permissive crossing he fell and was run over by appellant's switching engine. A jury returned a verdict for $4,500 in the survival action and for $4,200 in the death action. These appeals are from the order of the court below dismissing appellant's motion for judgment *non obstante veredicto* and the judgments on the verdicts.

---

[1] Act of July 2, 1937, P.L. 2755, 20 PS §772; Act of April 15, 1851, P.L. 669, Section 19, 12 PS §1601; Act of April 26, 1855; P.L. 309, 12 PS §1602, as amended.

Peter M. Echon, Jr. on September 16, 1945, a clear day, about 5 o'clock p.m. entered upon a permissive crossing over appellant's right-of-way at or near the boundary between the adjacent cities of Arnold and New Kensington. At this point appellant company maintains two main tracks and two siding tracks running north and south. Decedent who was 46 years of age and in good health, was entering upon the crossing on the western side of the tracks. The eastern terminus of the permissive crossing was Constitution Boulevard at the foot of North Street. When decedent was about to cross the westernmost track, he fell forward upon the track. The cause of the fall is unknown. He remained prostrate. Thereafter[2] the engine which had completed moving two cars southwardly over and past the permissive crossing toward a water tower located on the west side of the tracks south of the crossing approximately 200 to 225 feet away, commenced backing northwardly. The engine was moving at approximately 2 to 3 miles per hour and continued over the body of decedent, coming to a stop only after the locomotive had completely passed over the body, and Hawk, one of the brakemen riding the front of the engine noticed something hit the footboard on which he was standing and saw decedent's body lying between the rails, whereupon he called to the engineer and signaled him to stop. There was no one riding the stirrup on the rear of the engine's tender nor was there any employe of appellant deployed to determine whether there were any obstructions in the path of the engine as it proceeded to back, or persons who might have been using the permissive crossing at that time. Hawk testified that the bell was sounded "immediately after" the

---

[2] Gordon Buckley stated (R. 82a) : "The engine started back right soon after."

engine started. However, the decedent was then already lying upon the track.[3]

A praecipe in trespass was filed September 5, 1947 and the complaint was filed October 2, 1947. The case came on for trial May 25, 1949. One week prior to trial, counsel for appellant advised counsel for appellee of his intention to request leave of court to file an answer asserting the one-year limitation contained in the Act of 1855. Upon request of counsel for appellee, presentation of any motion to the court was postponed until the day of trial. Objection was then made by appellee to allowance of the request. The trial judge reserved decision thereon and the case proceeded to trial with resulting verdicts in favor of appellee.

Appellant contends that (1) as regards the cause of action for wrongful death, the same had expired one year after the date of death; (2) the evidence is insufficient to sustain a finding of negligence on the part of appellant, and (3) decedent was guilty of contributory negligence as a matter of law. Appellee contends and the court below held that the one-year limitation contained in the Act of 1855 relating to the action for wrongful death is a statute of limitations which must be set up as a defense within the period prescribed by Rule 1045(c) of the Rules of Civil Procedure, and, that there is sufficient evidence to sustain the verdicts of the jury.

Appellant's contention that the Act of 1855 created a right which did not exist at common law and that the time within which the action shall be brought is a limitation upon the right itself rather than a limitation upon assertion of the right cannot be sustained.    In

---

[3] In its brief appellant states that it ". . . seems obvious that Mr. Echon's fall rendered him unconscious since he did nothing to extricate himself from his perilous position and that any warning [by bell] was bound to be ineffectual."

*Rosenzweig v. Heller,* 302 Pa. 279, 153 A. 346, this Court held that the Act of 1855 was a general statute of limitations. It was said (p. 287) : "The very language of the act marks it as a statute of limitation, not as one conditioning the right of action." *Guy v. Stoecklein Baking Company,* 133 Pa. Superior Ct. 38, 1 A. 2d 839, relied upon by appellant, is inapposite. In that case, Section 315 of the Workmen's Compensation Act of June 2, 1915, P.L. 736, 77 PS §602, provided that all claims for compensation in cases of personal injury should "be forever barred, unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this article; or unless, within one year after the accident, one of the parties shall have filed a petition as provided in article four hereof." It was there held that the limitation was a condition put by the law upon a substantive right.

The Act of 1855 does not create the right and will not now be construed as a condition attaching to the right created by the Act of 1851.

Appellant suggests that in any event the court below abused its discretion in denying to it the right to file an answer asserting the defense of the one-year limitation. Rule 1030 of the Rules of Civil Procedure is made applicable to actions in trespass by Rule 1045(c). Rule 1030 provides: "The defenses of . . . statute of limitations and waiver *shall be pleaded* in a responsive pleading under the heading 'New Matter'. Any other affirmative defense may be similarly pleaded." (Emphasis supplied) Rule 1045(c) relating to actions in trespass provides: "The affirmative defenses enumerated in Rule 1030 *must be pleaded."* (Emphasis supplied) Rules of procedure are promulgated for the purpose of clarifying and making reasonably certain and expeditious the method of prosecuting a cause of action to final judgment. To achieve this desired end parties to an action must comply therewith. The extent

of power in lower courts to permit variances of the strict letter of the rule need not now be determined. It is sufficient in the instant case that in the circumstances presented, refusal to permit the filing of an answer 19 months after the service of a complaint cannot be said to constitute an abuse of discretion. Especially is this true where the sole excuse is inadvertence of counsel.

With regard to the scope of appellate review where an abuse of discretion by a court below is asserted, it was said in *Garrett's Estate*, 335 Pa. 287, 292, 6 A. 2d 858: "In reviewing the exercise of discretionary power, it is impracticable to lay down a general rule that will determine when such a petition should be granted and when it should be refused. The circumstances of the particular case must control. When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. 'An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is over-ridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' Mielcuszny et ux. v. Rosol, 317 Pa. 91, 93, 94, 176 A. 236."

There was ample evidence to warrant a finding by the jury that appellant was guilty of negligence. Considering the evidence in the light most favorable to appellee, and giving her the benefit of all inferences and conclusions reasonably to be made therefrom, existence of a permissive crossing was clearly established. Hundreds of people each day for many years had traversed

the tracks over the path in question while travelling to and from Fifth Avenue on the westerly side of the tracks and Constitution Boulevard on the easterly side.[4] Appellant company knew or should have known that a portion of its property was being used by the public. "When a railroad company has for years, without objection, permitted the public to cross its tracks at a given point, there arises the same legal obligation of reasonable care on its part toward those using such crossing as if were a public one . . .": *Figard v. Pennsylvania Railroad Company*, 361 Pa. 380, 65 A. 2d 411.

Appellant contends, however, that the testimony of Gordon Buckley and Norman Buckley, who at the time of trial were 14 and 12 years of age respectively, was so contradictory and inconclusive that a jury should not be permitted to find a breach of duty owed by it to decedent. These two boys were the sole eye witnesses to the accident. They were sitting on a pile of asphalt west of the tracks and south of a public grade crossing of the railroad located about 100 yards north of the point where the permissive crossing led onto the railroad tracks. They first saw decedent when close to the westernmost track and saw him fall forward onto the track. Prior thereto they observed appellant's switching engine push two cars southwardly over and past the permissive crossing toward a water tower. While at the tower the two cars were unhooked and the engine began moving backward toward the crossing. The engine started back *after* decedent had fallen upon the track. Uncontradicted testimony established the length of a car to be between 40 and 45 feet. The exact distance

---

[4] Frickanisce, chief of police of the City of Arnold, testified the path was used "constantly" since he came to Arnold in 1921. Robert Zamperini stated the path had been used constantly for over 20 years. Appellee and one John Ahlquist testified similarly except for a lesser period of years. Photographs introduced in evidence show a well defined path.

from the crossing to the water tower was not given. Frickanisce estimated it to be about five car lengths which would make it from 200 to 225 feet. Gordon Buckley testified that when the engine stopped to unhook the cars it was pushing, "It wasn't quite past the water tower.", and that the rear end of the tender was then about four car lengths from the crossing. This would make the latter distance from 160 to 180 feet, Gordon Buckley's testimony thus approximately conforms with Frickanisce's estimate of the distance from the crossing to the tower since it was established that the over-all length of the engine and tender was 65 feet. At least it placed the engine and tender more than 100 feet from the crossing and beyond the "blind spot" appellant's witnesses testified was produced by the tender when the engine was moving backward.

Appellant points out that after Gordon Buckley estimated the distance from the rear of the tender to the crossing when the engine started back as four car lengths, when asked how far he thought four car lengths were, he answered, "I don't know—about 50 feet, something like that." Even adults generally are at a loss in fixing distances by feet or yards but able to judge by using physical objects as yardsticks. The variations and asserted irreconcilable contradictions in the testimony of Gordon Buckley were matters to be considered by the jury and affected his credibility and the accuracy of his recollection. The same is true of the testimony of Norman Buckley who corroborated his brother Gordon as to how the accident happened but did not give or estimate any of the distances involved. Both boys stated that Gordon called and tried to attract the attention of the engineer as the engine was moving toward the crossing. Appellant's proof of the existence of a "blind spot" 100 feet in length consisted entirely of oral testimony which could have been rejected by the jury. It is uncontradicted that decedent

was lying prostrate upon the track before the engine and tender started over the crossing.

Against the presumption that decedent used due care in approaching the permissive crossing, appellant contends that decedent was guilty of contributory negligence because the shifting engine was in full view and so near that the engine crew could not see him once he had reached the track. This contention ignores testimony that the engine was more than 100 feet away from the point at which he was killed and that it began to back only *after* decedent had fallen. The argument assumes that the jury believed appellant's witnesses and disbelieved all others. Such presumption cannot be permitted here in view of the verdicts and any argument based thereon is untenable. Appellant's further contention that decedent was guilty of contributory negligence as a matter of law for the reason that he ignored other safe ways of crossing appellant's tracks and instead chose to use this permissive crossing is equally without foundation. The length of other suggested routes was not clearly established, although they were shown to have been circuitous. Adoption of appellant's argument would effectively negative its established duty with regard to a permissive crossing (*Figard v. Pennsylvania Railroad Company*, supra; *Francis v. Baltimore & Ohio Railroad Company*, 247 Pa. 425, 93 A. 490) and place upon one using the same the disabilities attaching to a trespasser.

The circumstances in *Tharp v. Pennsylvania Railroad Company*, 332 Pa. 233, 2 A. 2d 695, and other cases relied upon by appellant in support of its claim that decedent chose a hazardous rather than a safe course equally accessible are distinctly dissimilar and, therefore, not controlling.

Judgments affirmed.