Pinkerton, Appellant, v. Solis.

Argued March 20, 1951. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and GUNTHER, JJ. (DITHRICH, J., absent).

*Samuel Lichtenfeld,* for appellant.

*T. D. Wade,* with him *Wade, Wade and Wade,* for appellees.

OPINION BY RENO, J., July 19, 1951:

Invoking Pa. R. C. P. No. 1034, 354 Pa. xlv, plaintiff moved for judgment on the pleadings; the court below entered judgment for defendants; and plaintiff appealed. The judgment can be sustained only if the pleadings present a case clear and free from doubt; and every doubt must be resolved against the entry of a summary judgment. *Kittaning Coal Co. v. Moore,* 362 Pa. 128, 66 A. 2d 273; *Rohm & Haas Co. v. Lessner,* 168 Pa. Superior Ct. 242, 77 A. 2d 675.

Plaintiff instituted assumpsit on August 23, 1949, to recover treble damages[1] for rent paid from February 1947, to March 1949, in excess of the maximum rent prescribed under the Federal Housing and Rent Act of June 30, 1947, c. 163, Title II, §205, 61 Stat. 199, as amended, 50 U. S. C. A., App. §1895. Plaintiff became defendants' tenant on December 6, 1946, at a rental

---

[1] The amount sued for is $1854, i.e., 3 times the excess of rent paid, $618. The latter figure is calculated as follows: From February 1947, to February 1949, 24 months, plaintiff was overcharged the difference between $12 and $35, or $23 a month, a total of $552. During February and March, 1949, he paid $45 a month, an overcharge of $33 a month, or $66. The total of all overcharges is $618. Defendants contend that the increase did not become effective until August 1947.

of $12 per month, the premises being a dwelling house consisting of 4 rooms and a shed. During the summer of 1947, at plaintiff's request, defendants installed a bedroom, bathroom, laundry and kitchen and plaintiff orally agreed to pay $35 per month rent which amount, plaintiff avers, was collected from February 1947 until February 1949. Also, at a time not definitely stated, defendants again acting at plaintiff's suggestion, installed an oil burning central heating furnace instead of the coal furnace originally contemplated and plaintiff agreed that the rent be increased to $45 a month. The court held that the alterations and improvements exempted the premises from the rent control legislation, relying upon §202 of the Act, supra, 50 U. S. C. A., App. §1892(c) (3) which excludes from its operation: "any housing accommodations (A) the construction of which was completed on or after February 1, 1947 . . ."

Defendants flatly admitted the averment in plaintiff's complaint: "On June 22, 1949, the Area Rent Director issued an order effective March 21, 1949, increasing the rent ceiling to $50.00 per month from $12.00 a month under section S-5(a) (1) (3) of the rent regulations." The inferences which can be reasonably drawn from the averment and admission are: (1) That at some prior date the monthly rental was authoritatively fixed at $12 per month; (2) that the increase of rent to $50 a month was authorized upon a petition for an adjustment of rent because óf major capital improvements or for increased occupancy or for some other reason[2] recognized by the Act and the regulations issued pursuant thereto; and thus indicating (3) that on June 22, 1949, the premises were not exempt from rent control. In our view the admis-

---

[2] For a brief outline of the grounds upon which an increase of rent may be secured, see Stern's Trickett on Landlord and Tenant, §712.

sion raised a sufficient doubt to justify refusal of summary judgment.

Moreover, persuasive decisions indicate that §202(c)[3] does not apply to the premises here involved. There are two separate and distinct types of exemptions: (1) "construction" completed subsequent to February 1, 1947, which refers to new houses, and (2) a "change" or "conversion", which refers to alterations to an existing building which changes it from a nonhousing to a housing use or which increases the number of housing units therein. *Bancroft Realty Co. v. Alencewicz,* 7 N. J. Super. 105, 72 A. 2d 360. The exemption was intended to encourage the creation of a greater number of dwelling units available for rental and applies only to new housing accommodations. *Woods v. MacNeil Bros. Co.,* 80 F. Supp. 920. Alterations or improvements, even though substantial, will not exclude leased premises from the statute and thus "decontrol" them unless they result in the creation of completely new self-containing housing units. *U. S. v. Beatty,* 88 F. Supp. 791; *Woods v. Ginocchio,* 180 F. 2d 484; *Comstock v. Mahon,* 76 N. Y. S. 2d 642.[4] See also *Woods v. Malas,* 81 F. Supp. 485.

---

[3] Section 202(c) (3), supra, excludes "any housing accommodations (A) the construction of which was completed on or after February 1, 1947, or which are housing accommodations created by a change from a nonhousing to a housing use on or after February 1, 1947, or which are additional housing accommodations created by conversion on or after February 1, 1947 . . ." from the term "controlled housing accommodations", and are not subject to rent control.

[4] Further support of the rule is found in the regulations and interpretations promulgated by the Federal authorities wherein "conversion" is defined as "(1) a change in a structure from a non-housing to a housing use, or (2) a structural change in a residential unit or units involving substantial alterations or remodeling *and resulting in the creation of additional housing accommodations.*" (Emphasis added.) 13 Fed. Reg. 5001, 5002.

The premises in question had been rented since 1946. While they may not have had modern conveniences they were apparently in a rentable condition and complete as a "housing accommodation" within the meaning of that term. The subsequent improvements did not, so far as the pleadings show, create new or additional dwelling units. Whether the improvements actually increased the housing units is an issue of fact, with the burden upon defendants to show that the improvements brought the premises within the prescribed exemption. *Woods v. Oak Park Chateau Corp.*, 179 F. 2d 611.

At this stage of the proceedings, and in view of the doubts created, not settled, by the pleadings, we refrain from a final expression of opinion. "Doubtful cases should go to trial, especially those involving intricate relations demanding an inquiry into the facts of the controversy": *Helfenstein v. Line Mountain Coal Co.*, 284 Pa. 78, 81, 130 A. 301. "Unquestionably a full inquiry into the facts of this case is essential to a proper determination of the issues involved": *Kittaning Coal Co. v. Moore,* supra, p. 132.

Although the question was not raised here or below, attention is called to the provision of §205, supra: "Suit to recover such amount [of excess rent payments] may be brought . . . within one year after the date of such violation." In *Berry v. Heller,* 79 F. Supp. 476, 477, the District Court for the Eastern District of Pennsylvania held: "Consequently only those overpayments which were made in the year immediately preceding . . . the date this suit was brought, may be recovered herein." But cf. *Ramseyer v. Contestabile,* 86 F. Supp. 104, (D. C., Pa.). Whether the statutory provision furnishes an affirmative defense within Pa. R. C. P. No. 1030 and whether appellees may now amend their answer, we cannot decide on this appeal. See *Echon v. Penna. R. R. Co.,* 365 Pa. 529, 76 A. 2d 175.

Reversed with procedendo.