## Battista v. Buckley

275

*Michael E. Kosik,* for plaintiffs.
*R. Stephen Shibla,* for intervenor.

DOWLING, *J.,* October 27, 1988—The freedom to choose one's own lawyer, perhaps not grist for the ACLU, nevertheless an important right, is here presented in the guise of a petition to intervene filed by plaintiffs' insurer, Millers Mutual Insurance Company.

Petitioner issued an all-risk insurance policy covering the property at 5400 Derry Street, Harrisburg. On October 14, 1987, these premises were destroyed by an explosion, and as a result the insurance carrier has paid to its insured $262,500. Subsequently, counsel for the insurance carrier wrote to plaintiffs' personal counsel advising him that he was not authorized to represent the company's interest with respect to a claim he was pursuing against allegedly responsible third parties. Nevertheless, without notice to the insurance carrier plaintiff filed an action on July 21, 1988, which included the insurance carrier's subrogated claim.

The Pennsylvania Rules of Civil Procedure provide as follows:

"Rule 2327. Who May Intervene —

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if ·

"(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

"(2) such person is so situated as to be adversely

affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

"(3) such person could have joined as an original party in the action or could have been joined therein; or

"(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

Plaintiffs do not dispute that Millers Mutual fulfills the criteria of Pa.R.C.P. 2327 and that consequently it may intervene if it satisfies Pa.R.C.P. 2329, which provides:

"[A]n application may be refused if . . . (2) the interest of the petition is already adequately represented. . . ."

It should first be noted that the court's action is discretionary as the rule states that the court *may* refuse the application for intervention if it determines that the petitioner's interests are adequately represented. The criteria for determining the operative presence of abuse of discretion are contained in *Echon v. Pennsylvania Railroad Co.*, 365 Pa. 529, 76 A.2d 175 (1950):

"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Echon, supra.*

Testimony was taken on October 13, 1988, at which time John H. Steffe Jr., vice president for claims of Millers Mutual, testified. He said that they had early and consistently advised plaintiffs' counsel that he was not to represent their interest, and that he was never notified that plaintiff had filed

suit, learning of it from a third party. Mr. Steffe felt that he should have the right to choose his own counsel and did not believe that the plaintiffs' attorneys could adequately represent this company's interest. While he did not question counsel's professional competency per se, he did feel from his knowledge of the loss and examination of the complaint that they had greatly inflated the plaintiffs' uninsured loss. Since it was the company's policy to prorate the amount recovered from a third person between the company's loss and the insured's uninsured loss, this would in itself create a problem. Furthermore, he objected to paying plaintiffs' counsel 35 or 40 percent of the amount recovered since he was able to secure a more advantageous arrangement with his own counsel.

Certainly a conflicting situation could easily arise in the event of settlement or a verdict for less than the total amount sued for. While the case appears to be one of clear liability, i.e., a gas explosion, this has not been legally determined. In any event, a settlement or a verdict for less than total damages claimed would be subject to conflicting claims between the insurance carrier and its insured, each desiring to secure the maximum benefit. Thus, plaintiffs' personal counsel, in representing his client, would certainly have a contrary interest to his representation of his client's insurance carrier. We had occasion to deal with a similar situation recently in *PMAC v. Wolfe et al.,* 108 Dauphin Rep. 130 (1988). That case involved a compensation statutory lien and the conflict rose to the surface at the time of settlement when there was a dispute as to how much of the front money on a structured basis should be allocated to the attorney's fees and how much to the insurance carrier's subrogation interest. It seems very obvious that when counsel repre-

sents an insured and his insurance carrier, he is in many instances, such as this one, serving two masters.

Rule 1.7, Conflict of Interest, of the Rules of Professional Conduct clearly recognizes the right of a client to choose or consent to representation. It states, in pertinent part, as follows:

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest unless:

"(1) the lawyer reasonably believes the representation will not be adversely affected; and

"(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

The comments to rule 1.7 provide that an impermissible conflict may exist by reason of incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.

It is worth noting that the Code of Professional Responsibility, predecessor to the Rules of Professional Conduct, explicitly referred to the potential for differing interests where a lawyer is asked to represent an insured and his insurer. Ethical Consideration 5-17 of the code provided in pertinent part:

"Typically recurring situations involving potentially differing interests are those in which a lawyer is asked to represent co-defendants in a criminal case, co-plaintiffs in a personal injury case, an insured and his insurer. . . ."

The plaintiffs rely on two appellate decisions which, however, are readily distinguishable. In *M. London Inc. v. Fedders Corp.*, 306 Pa. Super. 103, 452 A.2d 236 (1982), a panel decision authored by Judge Wickersham, the Superior Court held that there was no abuse of discretion by the lower court in denying the insurance company's petition to intervene where the petition was filed over two years from the date from which suit was commenced and at a time when the original parties were ready to proceed to trial. They noted that to allow intervention at this time would have been to countenance undue delay in the trial of the matter, circumstances certainly not present in the instant case.

In the other decision, *Wilson v. State Farm Mutual Co.*, 512 Pa. 486, 517 A.2d 944 (1986), the case involved a no-fault action and class certification, and was factually totally different from the matter before us. Furthermore, the court simply held that the trial court did not abuse its discretion when it determined that the intervenor's interest would not be adversely affected by a proposed settlement.

Plaintiffs also bring up the "floodgates" argument contending that to permit intervention in this case would mean that there would be no basis for denying intervention in other cases of subrogated interest. This, of course, is not correct since the court must consider the individual factors in each situation.

And finally plaintiffs, while reinforcing their position that petitioners' interests are adequately protected, state that any potential conflict would be in the recovery phase of the litigation and that at this time petitioners could obtain counsel to resolve the issue. However, it is to avoid such an end confrontation as, for example, occurred in *PMAC, supra,* that we now feel that intervention is warranted. It would

seem that plaintiffs themselves recognize that somewhere along the lines there is going to be a conflict with respect to the two potentially incompatible claims.

Accordingly, we enter the following

### ORDER

An now, October 27, 1988, the petition of Millers Mutual Insurance Company to intervene in the above case is granted.