634 A.2d 159

**In re Application of the MILTON S. HERSHEY MEDICAL CENTER OF the PENNSYLVANIA STATE UNIVERSITY.**

**In re Application of the HARRISBURG HOSPITAL.**

**Appeal of JOHN DOE, M.D.**

Supreme Court of Pennsylvania.

Argued May 3, 1993.

Decided Nov. 4, 1993.

---

Bruce E. Cooper, Harrisburg, for appellants.

Delbert J. McQuaide, R. Mark Faulkner, State College, Thomas B. Schmidt, III, Donna L. Fisher, Harrisburg, for appellees.

Before NIX, C.J., LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, and MONTEMURO, JJ.

FLAHERTY, Justice.

This is an appeal, by allowance, from an order of the Superior Court, 407 Pa.Super. 565, 595 A.2d 1290, which affirmed an order of the Court of Common Pleas of Dauphin County authorizing two hospitals to disclose that a physician on their medical staffs tested positive for Human Immunodeficiency Virus (HIV).

The physician in question, John Doe, M.D. (a pseudonym), was a resident in the obstetrics and gynecology departments of the Milton S. Hershey Medical Center of the Pennsylvania State University (Hershey Medical Center) and the Harrisburg Hospital. Dr. Doe served in this capacity for approximately two years before the events giving rise to this case.

In 1991, while assisting another physician in a surgical procedure, Dr. Doe was accidentally cut with a scalpel. Although it was unlikely that blood was transferred between the patient and Dr. Doe, because the cut did not occur above the patient's incision, it was impossible to be certain that no blood transfer took place. The next day, Dr. Doe voluntarily had his blood tested for HIV. The result was positive, so Dr. Doe withdrew from participation in further surgical procedures. A subsequent blood test confirmed the presence of HIV. Dr. Doe informed hospital officials of his condition and took a leave of absence. The manner in which Dr. Doe contracted HIV and the date when he became HIV-positive were not determinable.

Investigations were conducted by the Hershey Medical Center and the Harrisburg Hospital to determine which patients at those facilities had been placed at risk of contact with Dr. Doe's blood via surgical or obstetrical procedures in which Dr. Doe held or was likely to have held sharp instruments, i.e.,

procedures in which Dr. Doe might conceivably have sustained cuts that would have allowed his blood to come in contact with the blood of patients. The Hershey Medical Center determined that 279 of its patients fell into this category. The Harrisburg Hospital found that 168 of its patients were similarly situated.

Hospital records do not reflect each instance in which a surgeon sustains a cut. Nor do they particularize the exact roles taken by surgeons during operative procedures. Nevertheless, the determinations made by the two hospitals were in recognition of the fact that, in a small but nevertheless significant percentage of surgical procedures, surgeons suffer cuts that result in possible transfers of blood to patients.

The Hershey Medical Center and the Harrisburg Hospital filed petitions in the Court of Common Pleas of Dauphin County alleging that there was, under the Confidentiality of HIV–Related Information Act (HIV Act), 35 P.S. § 7608(a)(2), a "compelling need" to disclose information regarding Dr. Doe's condition to the patients potentially affected thereby as well as to certain physicians on the medical staffs. Both hospitals contended that disclosure to the patients was necessary to prevent the spread of HIV and to provide treatment, testing, and counseling. The hospitals asserted too that disclosure to certain physicians was necessary so that the physicians could contact their patients in the event that Dr. Doe had assisted in their surgical procedures. In opposition to the hospitals' petitions, Dr. Doe asserted that there was no compelling need for disclosure of his HIV-related information and that he was entitled to confidentiality under the Act.

After hearing arguments on the petitions, the trial court issued an order providing for partial disclosure. The order, which allowed a very selective and limited disclosure of Dr. Doe's identity and HIV-related information, read as follows:

AND NOW, this 14th day of June, 1991, Petitioners are hereby authorized to disclose the identity of Dr. Doe, M.D. as follows and only as thus authorized:

1. By providing the name of Dr. Doe to the physicians in the Obstetrics and Gynecology Departments including the physicians in the residency program.

2. By providing the name of Dr. Doe to a physician authorized in writing by a patient for whom Dr. Doe participated in a surgical procedure or obstetrical care.

3. By describing Dr. Doe in letters to patients and in media releases as "a physician in our joint Obstetrics and Gynecology residency program" and by setting forth the relevant period of such service.

Each physician to whom the name of Dr. Doe is provided under 1. and 2. above shall be reminded that the Act prohibits further disclosure of such information.

■ The issue presented for our review is whether the trial court, in concluding that the hospitals met their burden of showing a compelling need for disclosure under the HIV Act, committed an abuse of discretion.[1] See generally *John M. v. Paula T.*, 524 Pa. 306, 311–12, 571 A.2d 1380, 1382–83 (1990) (abuse of discretion as a standard of review), cert. denied, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. As stated in *Echon v. Pennsylvania Railroad Co.*, 365 Pa. 529, 534, 76 A.2d 175, 178 (1950) (quoting *Garrett's Estate*, 335 Pa. 287, 292–93, 6 A.2d 858, 860 (1939)),

When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. "An abuse of discretion is not

---

**1.** Temporary stays were granted with respect to the trial court's order, but, upon their expiration, the order was given effect. When disclosure occurred in accordance with that order, any appeal of the order became technically moot, but the merits of this case have been considered on appeal on the basis that the issues presented are ones that are capable of repetition. See *In re Gross*, 476 Pa. 203, 216, 382 A.2d 116, 123 (1978).

merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Mielcuszny et ux. v. Rosol,* 317 Pa. 91, 93, 94, 176 A. 236.

Accord *Commonwealth v. Powell,* 527 Pa. 288, 297 n. 8, 590 A.2d 1240, 1244 n. 8 (1991) (A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.).

 The trial court, after weighing the interest of Dr. Doe in maintaining his privacy against the interest of the hospitals and their patients in permitting disclosure, determined that a limited form of disclosure was warranted. We perceive no abuse of discretion.

The HIV Act was promulgated to promote voluntary blood testing to limit the spread of HIV. 35 P.S. § 7602. HIV causes the fatal disease known as Acquired Immune Deficiency Syndrome (AIDS). Confidential testing was viewed by the legislature as a means of encouraging persons who believe they may have been exposed to HIV to obtain testing and counseling, thereby protecting the public health. *Id.*

The HIV Act imposes strict limits upon the dissemination of information pertaining to an individual's HIV status. 35 P.S. § 7607. It is undisputed that Dr. Doe's status as a carrier of HIV is encompassed by the Act's definition of confidential information, and that, as such, the information falls within the Act's general proscription on disclosure. The proscription is, however, subject to numerous exceptions set forth in the Act. *Id.* The exception under which HIV-related information was disclosed in the present case is set forth in 35 P.S. § 7607(a)(10), which provides that courts can order disclosure in accordance with 35 P.S. § 7608.

The latter section provides that disclosure can be ordered if a compelling need therefor has been shown:

(a) **Order to disclose.**—No court may issue an order to allow access to confidential HIV-related information unless

the court finds, upon application, that one of the following conditions exists:

. . . .

 (2) The person seeking to disclose the information has a *compelling need* to do so.

35 P.S. § 7608(a)(2) (emphasis added).

The term "compelling need" is not defined in the HIV Act. Nevertheless, inasmuch as the term obviously may encompass a wide variety of circumstances, the legislature provided a method by which to assess whether a given need should be regarded as a compelling one. Specifically, a balancing analysis is to be applied. In 35 P.S. § 7608(c), it is provided:

 **(c) Compelling need.**—In assessing compelling need for subsections (a) and (b), the court shall weigh the need for disclosure against the privacy interest of the individual and the public interests which may be harmed by disclosure.

The record reveals that the trial court, in conducting the balancing analysis required under the statute, considered all relevant factors and reached a decision that reasonably balanced the interests of Dr. Doe, the public, and the hospitals. Dr. Doe's interest in maintaining his privacy was fully weighed, but the hospitals' need for disclosure to protect the public health was viewed as more compelling. Given the infectious nature of HIV, and the fact that HIV causes AIDS which is in all cases fatal, the fact that some of the hospitals' patients may have been exposed to HIV was a matter of most serious concern. This concern was heightened by the fact that HIV can be transmitted to others through sexual contact and through contact with blood and other bodily fluids. Only through disclosure could the risk of an unnecessary spread of the disease be curtailed. Without disclosure, any patients who contracted the disease would unknowingly continue to engage in activities that would spread the disease to others.

All of the medical experts who testified in the hearings below were in agreement that, in light of the risks presented, it was reasonable to give some form of notice to the patients. Even the expert witness presented by Dr. Doe agreed that

there was at least some conceivable risk of exposure and that giving a very limited form of notice to the patients would "not be unreasonable."

The possibility that disclosure would help to limit the spread of HIV, and thereby save lives, provided the trial court with an ample basis for concluding that a compelling need for disclosure had been established.

The trial court's order, supra, was narrowly drawn to protect the privacy interests of Dr. Doe. Dr. Doe's name was not revealed to the public, the media, or to the patients concerned. Patients were simply informed that a resident physician who participated in their surgical or obstetrical procedures was HIV-positive. Counseling and HIV testing were offered to the patients. The trial court fully considered the option of providing an even less specific reference to the source of the HIV risk, as, for example, by merely allowing disclosure of the fact that a "health care worker" at the hospitals was HIV-positive. This alternative, however, was quite reasonably viewed as being insufficient to alert patients to the specific risk of their exposure and as being so broad as to unduly cause panic among patients who had not received surgical or obstetrical treatment through the obstetrics and gynecology departments.

Dr. Doe's real name was disclosed only to physicians associated with him in the obstetrics and gynecology departments of the two hospitals involved, and to physicians authorized by the affected patients. Such disclosures were intended to assist physicians in determining whether they had identified all of the patients who were placed at risk, as well as in assessing risks to individual patients in view of the physicians' knowledge of Dr. Doe's involvement in particular surgical procedures. Knowledge of Dr. Doe's specific role in these procedures was viewed as important to physicians who would be advising patients as to whether they should be tested for HIV.

In short, the trial court's order was reasonably structured to protect Dr. Doe's interests while accommodating the hospitals' need for disclosure. The order reflected due regard for

protection of the public health and for avoidance of unwarranted anxiety among patients of the hospitals concerned.[2]

Further, disclosure was clearly consistent with the primary purpose of the HIV Act. That purpose, as earlier mentioned, was to reduce the spread of HIV and AIDS. In 35 P.S. § 7602(a), the legislative intent was set forth, in pertinent part, as follows:

(a) **Findings.**—The General Assembly finds that the incidence of acquired immune deficiency syndrome (AIDS) is increasing in this Commonwealth at a significant rate. Controlling the incidence of this disease is aided by providing testing and counseling activities for those persons who are at risk of exposure to or who are carrying the human immunodeficiency virus (HIV), which is the causative agent of AIDS. Testing and counseling are promoted by establishing confidentiality requirements which protect individuals from inappropriate disclosure and subsequent misuse of confidential HIV-related information.

Disclosure did not undermine the policy favoring confidentiality which was established by the legislature. Confidentiality was not the purpose of the Act, but rather was the means chosen by the legislature to further the Act's goal of limiting the spread of HIV and AIDS. The legislature expressly contemplated that disclosures of HIV-related information would be made. Indeed, the legislature expressly provided that disclosure was permissible under a variety of enumerated circumstances, including circumstances of compelling need. 35 P.S. §§ 7607(a)(10), 7608(a) supra. No principle is more deeply embedded in the law than that expressed in the maxim, "Salus populi suprema lex," Bac.Max. reg. 12 (The welfare of the people is the supreme law), and a more compelling and

2. The trial court's decision was made unnecessarily difficult by the hospitals' inability to determine the precise nature of Dr. Doe's contact with his former patients. Specifically, the hospitals were unable to determine whether Dr. Doe had ever sustained an injury that could have resulted in the transfer of blood. Certainly, given this lack of information, the trial court would have had discretion to reach a different result. Hospitals would be well advised to maintain records that document any incident that could expose a patient to infection.

consistent application of that principle than the one presented would be quite difficult to conceive. Thus, we perceive no error in the trial court's order allowing limited disclosure.

Order affirmed.

LARSEN, J., did not participate in the decision of this case.