7 N.J. Super. 30 (1950)
71 A.2d 727
FORD MOTOR COMPANY, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF EMPLOYMENT SECURITY, BOARD OF REVIEW; JOHN KIERNAN; GEORGE BOHACS; INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW-CIO); LOCAL 906, UAW-CIO; LOCAL 980, UAW-CIO; GENERAL CABLE CORP., AND INTERNATIONAL SMELT REFINING CO., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1949.
Decided March 6, 1950.
*32 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Eugene L. Lora argued the cause for appellant.
Mr. Abraham L. Friedman argued the cause (Mr. Samuel L. Rothbard, on the brief) for respondents International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), John Kiernan and Local 906 of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO) (Messrs. Rothbard, Harris & Oxfeld, attorneys) and Local 980 of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO) and George Bohacs (Mr. Harry J. Weiner, attorney).
Mr. Clarence F. McGovern argued the cause for respondent Board of Review.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
Ford Motor Company appeals from a decision of the Board of Review of the Division of Employment Security, New Jersey Department of Labor and Industry, which held claimants John Kiernan and George Bohacs not disqualified under R.S. 43:21-5(d) to receive unemployment compensation benefits during the period from May 11, 1949, to and including June 7, 1949.
Ford Motor Company is a Delaware corporation, with its principal office and plants located in Dearborn, Michigan, and is engaged in the manufacture of motor cars and trucks. Ford operates an assembly plant at Dearborn and also operates *33 assembly plants in various states, including two in New Jersey  one at Edgewater and the other at Metuchen. Forty per cent of the parts used in the various assembly plants are manufactured at Ford's plants in Michigan; the remainder of the parts are purchased from other companies. All the parts are shipped from Michigan to the various assembly plants.
The executive offices in Michigan exercise direction and control of the New Jersey plants. All the assembly plants are closely integrated with the Michigan plants and form one production system centered in Michigan.
Early in May, 1949, workers at the central Ford plant in Michigan went on strike in protest against an alleged speed-up of production. The strike was called by two local unions and subsequently sanctioned by the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (hereinafter referred to as UAW-CIO). As a result of this strike, the New Jersey plants were forced to shut down for lack of necessary automobile parts and the workers engaged therein became unemployed.
John Kiernan is an employee of Ford at its assembly plant at Edgewater, New Jersey, and George Bohacs is an employee of Ford at its assembly plant at Metuchen, New Jersey. Both applied for unemployment compensation. All the employees of the Edgewater plant are members of Local 980 of UAW-CIO and all employees of the Metuchen plant are members of Local 906 of UAW-CIO. These locals are separate and distinct from the two striking locals in Michigan, although all are members of the International Union, UAW-CIO. Each local has the sole right to call a strike of its members, and then only after a secret ballot of the membership. There was no labor dispute at either of the New Jersey plants; no strike vote was taken and no strike was called by either local; there was no picketing, no sympathy strike and no walkout. The claimants and other workers continued on the job until they were informed that there was no more work available to them because of lack of materials. In both plants the employer started to lay off workers on May 11, 1949, and they *34 were not recalled until June 8, 1949, when the employer started to operate the two assembly plants in New Jersey on a nearly normal basis. These are test cases which involve the rights of some four thousand workers at the two New Jersey plants.
Ford argues that the claimants were disqualified to receive unemployment compensation benefits under R.S. 43:21-5 (d), which provides:
"An individual shall be disqualified for benefits:

* * * * * * *
"(d) For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: provided, that this subsection shall not apply if it is shown that:
"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and
"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case in which (1) or (2) above applies separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."
Since the unemployment was due to a stoppage of work which existed at the New Jersey plants, the primary question is whether it existed "because of a labor dispute at the factory, establishment, or other premises at which" the claimants were employed.
Ford contends that the two New Jersey assembly plants are so functionally integrated and synchronized with the Michigan plants as to constitute a single establishment, and therefore the labor dispute at the Michigan plants was a labor dispute at the establishment at which the claimants were employed.
Our courts have not construed the meaning of "establishment" as used in this Act, and the Act itself contains no definition. Webster's New International Dictionary, Second *35 Edition, defines "establishment" as "The place where one is permanently fixed for residence or business; residence, including grounds, furniture, equipage, retinue, etc., with which one is fitted out; also, an institution or place of business, with its fixtures and organized staff; as, large establishment; a manufacturing establishment." We think the word "establishment" can have different meanings; in its broadest sense it could mean all the plants of a single employer, whether functionally integrated or not; in its narrowest sense each plant would be a separate establishment. Since the word "establishment" as used in this disqualification provision is ambiguous, the court must face the difficult task of determining, as best it can, what the Legislature intended.
Ford argues that functional integrality is the sole test which should be applied in determining whether separated places of business of one employer are one establishment under our statute, and relies on Spielmann v. Industrial Commission, 236 Wis. 240, 295 N.W. 1 (Sup. Ct. 1940); Chrysler Corporation v. Smith, 297 Mich. 438, 298 N.W. 87 (Sup. Ct. 1941); 135 A.L.R. 900; Unemployment Comp. Com. v. Aragon, 329 U.S. 143, 91 L.Ed. 136 (1946); Saunders v. Maryland Unemployment Compensation Bd., 53 A.2d 579 (Md. Ct. of App. 1947). None of these cases support Ford's contention.
In the Spielmann case two plants of the Nash-Kelvinator Corporation located in Wisconsin  one at Milwaukee and one at Kenosha  separated by a distance of forty miles, were held to constitute a single establishment under the Wisconsin statute. It is to be noted that the Wisconsin statute contains only the word "establishment" without accompanying words of limitation and that the decision was based on "the physical proximity, functional integrality and general unity" of the plants. (Italics ours.)
In the Chrysler case nine plants of the Chrysler Corporation located in Michigan, all within eleven miles of the main plant, were held to constitute a single establishment. The Michigan statute in effect at the time, like the Wisconsin statute, contained only the word "establishment" and the *36 court, with two justices dissenting, relied upon the test applied in the Spielmann case, namely, "the physical proximity, functional integrality and general unity" of the plants.
The U.C.C. v. Aragon case involved no question whether separate plants constituted one establishment.
The Saunders case has no bearing on the question before us.
Whatever breadth of meaning the word "establishment" might have in the disqualification provision in a statute, such as that of Wisconsin, where it stands alone, we think that in our statute its breadth of meaning is limited by the context. In our Act the language is "at the factory, establishment, or other premises." It specifies not one but three classifications into one of which must fall the place where the labor dispute occurs. That "factory" and "establishment" were considered as premises is indicated by the additional words "or other premises." "Premises" means "The property conveyed in a deed; hence, in general, a piece of land or real estate; sometimes, especially in fire insurance papers, a building or buildings on land; the premises insured." Ballentine's Law Dictionary, Second Edition 1948. "Premises," then, suggests a fixed geographical location. In its broadest sense "establishment" includes not only factory but also particular business premises not covered by the term "factory," such as garages, laundries, department stores, banks, etc. It is one of the cardinal rules of statutory construction that legislation should be so construed that, if possible, full force and effect shall be given to every sentence, clause and word thereof. Oldfield v. New Jersey Realty Co., 1 N.J. 63 (1948); 2 Sutherland, Statutory Construction, § 4705 (3rd Ed. 1943). In order to give effect to the word "factory" we must determine that "establishment" was not intended in its broadest sense, but was used in a narrower sense which includes only particular business premises not covered by the term "factory." In General Motors Corporation v. Mulquin, 134 Conn. 118, 55 A.2d 732 (1947), the Supreme Court of Errors of Connecticut placed the same construction on "establishment" in the disqualification provision of the Connecticut Act, which uses "factory, establishment, or other premises."
*37 The general rule is that where a word or phrase occurs more than once in a statute, it should have the same meaning throughout unless there is a clear indication to the contrary. Oldfield v. New Jersey Realty Co., above. "Establishment" is used in Section 43:21-19(g), which provides: "* * * All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all the purposes of this chapter. * * *" If the Legislature intended "establishment" to include all separate factories and places of business of a single employer within this State, this provision would appear to be meaningless. The implication is that if the factories and places of business are separated, they are not a single establishment. Cf. Tennessee Coal, Iron & R. Co. v. Martin, 36 So.2d 535; affirmed, 36 So.2d 547 (Ala. Sup. Ct. 1948). Again, in the disqualification subsection, there appears in subparagraph (2): "provided, that if in any case * * * separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separated departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises." The need for and the language used in this exception, under which there may be more than one factory or establishment at the same premises, connotes a general meaning of "factory" and "establishment" which is coextensive with the particular premises.
The practice and interpretative regulations by officers, administrative agencies, department heads, and others officially charged with the duty of administering and enforcing a statute, will carry great weight in determining the operation of the statute. 2 Sutherland, Statutory Construction, § 5105 (3rd Ed. 1943). The New Jersey Board of Review on May 1, 1939, In the Matter of New England Carrier Corp., BR 45 L, held that the separate freight terminals of a common carrier  one in New Jersey and one in Rhode Island  were not the same "establishment." As the board said below: "It *38 is highly significant that although this board has continued to follow that principle for ten years in many hundreds of labor dispute cases, it has never been challenged until now."
Where a statute has received a contemporaneous and practical interpretation, and the statute as interpreted is reenacted, the practical interpretation is accorded greater weight than it ordinarily receives, and is regarded as presumptively the correct interpretation of the law. 2 Sutherland, Statutory Construction, § 5109 (3rd Ed. 1943). Although the Board of Review from 1939 on gave a narrow construction to "establishment" the section under consideration was amended in 1945 by P.L. 1945, c. 308, § 1, without change in the pertinent language.
Alabama, which is one of the seven states (including Wisconsin and Michigan) which uses only the word "establishment" in the disqualification clause, refused to follow the test of "physical proximity, functional integrality and general unity" applied in the Spielmann and Chrysler cases. In Tennessee Coal, Iron & R. Co. v. Martin, above, the employer's steel mills, coal and iron mines, and its connecting railroads were functionally integrated. A strike of the steel workers and ore miners resulted in the unemployment of the claimant coal miners. The Alabama Supreme Court, in holding that the coal mine was a separate "establishment," said:
"* * * Clearly enough under the liberal interpretation of this statute, and the strict construction rule applicable to the matter of disqualification, the courts would not be justified in construing this word as meaning functional integrality and general unity of the business of a large corporation as the Tennessee Coal & Iron Company with its many and varying units of industry. From the facts as found by the Court of Appeals, it is clear enough that the coal mine was the physical place of business of this claimant, and that being the normal and usual meaning and application of the word `establishment,' we are persuaded that the Court of Appeals was correct in giving that interpretation, as found in the majority opinion * * *."
The New Jersey type of disqualification clause reading "factory, establishment, or other premises" has been construed by the highest courts of Maryland, Illinois and Connecticut.
*39 In Tucker v. American Smelting & Refining Co., 55 A.2d 692 (Md. Ct. of App. 1947), the employees of a refinery plant at Baltimore, Maryland, were laid off because of a failure of supply of copper for the refinery from the company's smelting plant at Garfield, Utah, due to a strike at the Garfield plant. The court decided that the plant in Utah and the plant in Baltimore were not one "establishment." In commenting on the test applied in the Spielmann and Chrysler cases of "physical proximity, functional integrality and general unity" the court said:
"Plant managers, or even workmen, may commute forty miles to and fro daily. It would be futile to attempt to fix a precise limit (whether 2,000 miles, or more or less) of `physical proximity.' It is sufficient that in the ordinary use of words a plant at Garfield and one at Baltimore would not be called one `establishment' and facts are lacking which might give a special and unusual application to the word `establishment.'"
In Walgreen Co. v. Murphy, 386 Ill. 32, 53 N.E.2d 390 (Sup. Ct. 1944), the argument was advanced that the warehouse of the Walgreen Company was only one integrated unit of its chain store system. The court, in disposing of this argument, said:
"The words `establishment' and `premises' employed in section 7(d), are so commonly understood as units of place that further definition is superfluous. * * * Complete geographic isolation, contrary to the decision of the representative of the Director of Labor, is sufficient to justify classification of the warehouse as an establishment. Section 7(d) makes every `factory, establishment, or other premises' a unit for the purpose of ascertaining whether a stoppage of work due to a labor dispute exists. Here, the warehouse was an `establishment' or `other premises' by the mere fact of its location or `geographical isolation,' apart from all other establishments and enterprises of the Walgreen Company."
In General Motors Corporation v. Mulquin, above, the court held that geographical separation was an important factor in the determination of whether two Connecticut plants (17 miles apart) were one "factory."
*40 At least three states (Connecticut, Michigan and Oregon) have enacted amendments to their unemployment compensation statutes to meet the problem of disqualification of workers when the unemployment is due to a labor dispute engaged in by their own employer, although not at the precise geographical location where they themselves are employed. Connecticut, Laws 1947, § 1391i; Michigan, Laws 1943, No. 246, § 29(b); Oregon, Comp. Laws Ann., §§ 126-705(d) (Supp. 1947).
Our unemployment compensation law is remedial in nature and therefore should be liberally construed. Bergen Point Iron Works v. Board of Review, 137 N.J.L. 685 (E. & A. 1948); Singer Sewing, etc., Co. v. N.J. Unemployment Compensation Commission, 128 N.J.L. 611 (Sup. Ct. 1942); affirmed O.B., 130 N.J.L. 173 (E. & A. 1943). If unemployment compensation statutes are to accomplish their purpose, they must be given a liberal interpretation. 3 Sutherland, Statutory Construction, § 7211 (3rd Ed. 1943). The application of this principle, together with the guides set forth above, lead us to the conclusion that "establishment" as used in our disqualification clause was not intended in its broadest meaning, and that if two or more places of business of an employer are ever to be considered one "establishment," an essential factor must be physical proximity.
The distance between Ford's Michigan plants and its New Jersey plants is so great as to make it impossible to find physical proximity without destroying physical proximity entirely as a test. Tucker v. American Smelting & Refining Co., above. Cf. General Motors Corporation v. Mulquin, above. Cf. 49 Col. L. Rev. 550 (April, 1949).
This conclusion makes unnecessary any consideration of the question whether the escape clauses of the disqualification subsection came into play.
The judgment is affirmed.