787 A.2d 881

JOHN J. COYLE, JR., PLAINTIFF–APPELLANT, v. THE BOARD OF CHOSEN FREEHOLDERS OF WARREN COUNTY, JOHN DI-MAIO, INDIVIDUALLY, AND MICHAEL DOHERTY, INDIVIDUALLY, DEFENDANTS–RESPONDENTS.

Argued October 9, 2001—Decided January 16, 2002.

*Michael J. Perrucci* argued the cause for appellant (*Fischbein, Badillo, Wagner & Harding*, attorneys; *Maureen A. Coyle*, on the brief).

*John H. Dorsey* argued the cause for respondents (*Dorsey and Fisher*, attorneys).

*John P. Bender*, Assistant Attorney General, submitted a letter in lieu of brief on behalf of amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

LONG, J.

The Board of Chosen Freeholders of Warren County (Board) appointed John J. Coyle, Jr. to the position of county counsel for a three–year term on December 20, 2000. On January 1, 2001, a new Board rescinded Coyle's appointment and replaced him with Joseph J. Bell. The Board claimed the right to discharge Coyle under the Rules of Professional Conduct (Model Rules or RPCs) that require a lawyer to withdraw if he is discharged by the client. *RPC* 1.16. Coyle counters that, absent cause, he is entitled to serve out the term of office prescribed by the Legislature in *N.J.S.A.* 40A:9–43. The case requires us to analyze the interplay of the cited rule and statute.

## I

The case arose out of the following facts. The Board is made up of three members, each elected to a three–year term on a staggered basis; i.e., one member is elected each year. At the time of the general election in November of 2000, the Board consisted of two Democrats, James S. DeBosh and Ann Stone, and one Republican, John DiMaio. Stone lost her bid for reelection to Michael J. Doherty, a Republican, signaling a change in the Board's majority. Doherty was to take office on January 1, 2001. On December 20, 2000, the then-current Board passed a resolution appointing Coyle as Warren County counsel, an office with a three–year term according to *N.J.S.A.* 40A:9–43.

The one Republican on the Board, DiMaio, along with newly elected Doherty, who was present at the meeting, opposed the appointment and indicated to Coyle that he lacked the trust and confidence of the new Republican majority. DiMaio and Doherty asked Coyle to forego the appointment and indicated that if he did accept, he would be asked to resign upon the Board's reorganization in January. Coyle rejected the request and signed an employment agreement with the County. On January 1, 2001, upon reorganizing with its new member, the Board rescinded the employment agreement with Coyle and enacted a resolution appointing Bell as Warren County Counsel for a three–year statutory term.

On January 3, 2001, Coyle filed a complaint in lieu of prerogative writs, seeking a judgment declaring him to be county counsel. Because the Board did not allege that there was cause for Coyle's dismissal, no factual matter was presented for resolution. The trial court framed the issue as a legal one regarding whether *RPC* 1.16 or *N.J.S.A.* 40A:9–43 ultimately governs the dismissal of county counsel. The trial court ruled that the Appellate Division decision in *Pillsbury v. Board of Chosen Freeholders,* 140 *N.J.Super.* 410, 356 *A.*2d 424 (App.Div.1976), is dispositive of the issue and determined that the statutory term trumps *RPC* 1.16. In so doing, the court emphasized the importance of the public nature of

the Office of County Counsel and the Legislature's intention that there be continuity in that office, given that the composition of the Board could change annually. The court reinstated Coyle with back pay, and rescinded the Board's appointment of Bell.

The Board appealed and, prior to argument, the Attorney General accepted the Appellate Division's invitation to participate as *amicus curiae* to address the legal and public policy issues raised by the case. Subsequently, the Appellate Division reversed, holding that *RPC* 1.16 permitted the Board to terminate Coyle as Warren County Counsel without cause. *Coyle v. Board of Chosen Freeholders,* 340 *N.J.Super.* 277, 294, 774 *A.*2d 559 (App.Div.2001). In essence, the Appellate Division held that the case specifically implicated the ethical obligations of attorneys, thus triggering the court's interest in the vindication of its rules, and that there was no basis for distinguishing between county counsel and private counsel regarding the applicability of *RPC* 1.16.

Coyle has since been appointed to the Superior Court, thus rendering the actual controversy in the case moot. We choose nevertheless to briefly address the legal issue presented. *Zirger v. General Accident Ins. Co.,* 144 *N.J.* 327, 330, 676 *A.*2d 1065 (1996) (resolving abstract legal issue after appeal had been rendered moot "where the underlying legal issue is one of substantial importance, likely to recur but capable of evading review") (citations omitted).

II

The Board is governed by *N.J.S.A.* 40A:9–43. That statute provides that the Board "shall appoint a county counsel" whose "term of office ... shall be 3 years." In addition, such counsel may be removed from office "only for cause" and not for "political reasons." *N.J.S.A.* 40A:9–25. *RPC* 1.16 prescribes, in relevant part, that a lawyer "shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if ... the lawyer is discharged."

The parties to this appeal maintain absolute positions with respect to the statute and the rule. Coyle claims that the case is controlled by the statute; the Board asserts that the RPCs are determinative. They argue that this case presents a direct confrontation between the public policy expressed by the Legislature in creating a term of office for county counsel and the Supreme Court's constitutional authority to control the practice of law through the RPCs. The Attorney General stakes out a middle ground, invoking our decision in *Knight v. City of Margate*, 86 *N.J.* 374, 392, 431 *A.*2d 833 (1981), as requiring a "realistic and fraternal" evaluation of the comparative judicial and legislative interests. The Attorney General concludes that such an evaluation results in the statute being given primacy.

Before grappling with those issues, what is required is a determination of whether the cited authorities are, in fact, applicable at all in these circumstances. Obviously, by its very terms, *N.J.S.A.* 40A:9–43 is implicated. The relevance of *RPC* 1.16 is more problematic. A brief history of the Rule is instructive.

From September 1948, when the Rules Governing the Courts of New Jersey were first officially adopted, until September 1971, the Canons of Professional Ethics (Canons) governed the conduct of attorneys in this State. Canon 44 discussed the propriety of and conditions to an attorney's withdrawal from a relationship with his or her client, but was entirely silent regarding a client's entitlement to discharge his or her attorney. The text of Canon 44 remained unchanged until 1971.

In that year, the Supreme Court adopted the Disciplinary Rules (DRs) modeled after the American Bar Association Code of Professional Responsibility. New Jersey's *DR* 2–110(B)(4) tracked the language of the ABA's *DR* 2–110(B)(4) and provided, in pertinent part:

> A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
>
> . . . .
>
> (4) He is discharged by his client.

The language of *DR* 2–110 remained in effect until the Disciplinary Rules were replaced in 1984. In the interim, the Appellate Division decided *Pillsbury v. Board of Chosen Freeholders,* 140 *N.J.Super.* 410, 356 *A.*2d 424 (1976). Among other things, the court in *Pillsbury* distinguished the lawyer-client relationship in the public sector from the private lawyer-client relationship, and held that the statutory term and not *DR* 2–110(B)(4) governs the dismissal of a county counsel.

Three years later, a committee of the American Bar Foundation (ABF) published the *Annotated Code of Professional Responsibility* (1979), which included the following comment:

DR 2–110(B)(4) states that the lawyer must withdraw if he or she is discharged by the client.... An exception has been made for public counsel (county counsel) whose office was created by the legislature and whose term of office was fixed by statute. Unless good cause exists, such counsel may not be discharged or removed from office before the end of his or her term. *Pillsbury v. Board of Chosen Freeholders,* 133 *N.J.Super.* 526, 337 *A.*2d 632 (1975), *aff'd per curiam,* 140 *N.J.Super.* 410, 356 *A.*2d 424 (1976).

[*Id.* at 127–28.]

By that annotation, the ABF committee recognized the distinction between public and private sector representation enunciated in *Pillsbury.*

Thereafter, the ABA Commission on Evaluation of Professional Standards (Kutak Commission) published a Proposed Final Draft of the Model Rules of Professional Conduct. In that report, the text of *DR* 2–110(C)(3) provided that a lawyer "shall withdraw from the representation of a client if: ... (3) the lawyer is discharged." Kutak Commission, *Model Rules of Professional Conduct (Alternative Draft),* May 30, 1981, at 58. The "Legal Background" section of the Kutak Commission's notes reiterated the observation of the ABF committee:

The general rule that a client has discretion to discharge an attorney with or without cause *does not apply to public positions, such as county attorney,* where term of office and cause for discharge are controlled by statute. *E.g., Pillsbury v. Board of Chosen Freeholders,* [133 *N.J.Super.* 526,] 337 *A.*2d 632 ([Law Div.]1975), *aff'd per curiam,* [140 *N.J.Super.* 410,] 356 *A.*2d 424 ([App.Div.]1976).

[*Id.* at 66 (emphasis added).]

The following year, the Kutak Commission published the Final Draft of the RPCs, as amended in August 1982, with extensive changes and renumbering. *Model Rules of Professional Conduct (Final Draft)* (1982), *reprinted in A.B.A.J.*, Nov. 1982 (pullout supplement). The relevant portion of the ABA's *DR* 2–110 became Model Rule 1.16(a)(3), which provides that a lawyer "shall withdraw from the representation of a client if: . . . (3) the lawyer is discharged." *Id.* at 17.

In July 1982, the Supreme Court of New Jersey appointed a Committee on the Model Rules of Professional Conduct (Debevoise Committee) to review the ABA's Model Rules and to recommend to the Court whether those rules should be adopted in New Jersey. *Report of the New Jersey Supreme Court Committee on the Model Rules of Professional Conduct,* June 24, 1983 (*Debevoise Report*), at 1, *reprinted in* Michels, *New Jersey Attorney Ethics,* at 1073 (Gann 2000), *and in N.J.L.J.,* July 28, 1983 (pullout supplement). Model Rule 1.16 was among several "residual" rules that the Debevoise Committee "[a]pproved without discussion, and thus recommended . . . for adoption." *Debevoise Report* at 23, *reprinted in* Michels, *supra,* at 1115.

Effective September 10, 1984, the Supreme Court adopted an amended and supplemented version of the Model Rules, including *RPC* 1.16, to replace the Disciplinary Rules. The text of New Jersey's former *DR* 2–110(B)(4) can now be found in *RPC* 1.16(a)(3). The introduction to the RPCs in the New Jersey Court Rules refers readers to the official ABA Comments and commentary contained in the Debevoise Report for "assistance in interpreting these rules." Pressler, *Current N.J. Court Rules,* at 436 (Gann 2002). Reference to a public counsel exception to *RPC* 1.16(a)(3) again can be found in the "Legal Background" section of the ABA's *Annotated Model Rules of Professional Conduct* (1999):

The Rule recognizing a client's absolute right to discharge a lawyer is inapplicable to government lawyers, including publicly elected officials, such as states' attorneys. The terms of employment and grounds for discharge in such positions are controlled by statute. *See, e.g., Santa Clara County Counsel Attorneys Ass'n v. Woodside,* [7 *Cal.*4th 525, 28 *Cal.Rptr.*2d 617,] 869 *P.*2d 1142 (1994) (lawyers for

county agency had statutory right to sue agency for violations of labor law); *Walsh v. State*, [147 *N.J.* 595,] 689 *A.*2d 131 (N.J.1997) (employment relationship between public defender's office and assistant public defenders was determined by statute), *rev' g* on Judge Skillman's dissent, [290 *N.J.Super.* 1,] 674 *A.*2d 988, 994 ([App.Div.]1996).

It would then be fair to say that there was a common understanding on the part of the drafters of the Model Rules that *RPC* 1.16(a)(3) does not govern public attorneys with respect to whom the Legislature has established a statutory term of office and declared the conditions on which discharge may occur. When it adopted our rules, the Court obviously was aware of that gloss on the Model Rules and, more importantly, of *Pillsbury*, a case that had been decided eight years previously.

■ There is a long-standing canon of statutory construction that presumes that the Legislature is knowledgeable regarding the judicial interpretation of its enactments. *State v. Burford*, 163 *N.J.* 16, 20, 746 *A.*2d 998 (2000). When a statute has received "contemporaneous and practical interpretation," and the statute is thereafter amended without any change in the interpreted language, the judicial construction "is regarded as presumptively the correct interpretation of the law." *Ford Motor Co. v. New Jersey Dept. of Labor & Indus.*, 7 *N.J.Super.* 30, 38, 71 *A.*2d 727 (App.Div.) (citing 2 Sutherland, *Statutory Construction,* § 5109 (3d ed.1943)), *aff'd,* 5 *N.J.* 494, 76 *A.*2d 256 (1950); *see also Lemke v. Bailey*, 41 *N.J.* 295, 301, 196 *A.*2d 523 (1963); *Harper v. New Jersey Mfrs. Cas. Ins. Co.*, 1 *N.J.* 93, 98–99, 62 *A.*2d 135 (1948). Moreover, courts will not impute a legislative intention to alter an established judicial interpretation absent a "clear manifestation" of such intent. *State v. Dalglish*, 86 *N.J.* 503, 512, 432 *A.*2d 74 (1981). Those presumptions and rules of statutory construction apply equally to the judicial construction of judicially adopted rules. *State v. Vigilante*, 194 *N.J.Super.* 560, 563, 477 *A.*2d 429 (Law Div.1983) (citing *Diodato v. Camden County Park Comm'n,* 136 *N.J.Super.* 324, 327, 346 *A.*2d 100 (App.Div.1975)).

■ Given the history of *RPC* 1.16 and *Pillsbury's* interpretation of an identical disciplinary rule, the Court's faithful re-

enactment of that rule, without a disavowal of *Pillsbury*, leads us to conclude that *RPC* 1.16(a)(3) never was intended to apply to public counsel with statutory terms, and we so hold.

Nothing in this opinion should be viewed as altering, in any way, the fundamental standards governing resolution of an actual conflict between the RPCs and an initiative of another branch of government. As we indicated in *Knight v. City of Margate, supra,* such a conflict will be resolved by an assessment of the governmental purpose underlying the legislative or executive action and "the nature and extent of its encroachment upon judicial prerogatives and interests." 86 *N.J.* at 391, 431 *A.2d* 833. There was no need for such an assessment here because *RPC* 1.16(a)(3) is inapplicable on the facts presented.

We note finally that this case presented an additional issue involving the timing of Coyle's appointment. We see no reason to grapple with it now that the case has been rendered moot by Coyle's judicial appointment.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.