NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4580-18T3

KIRK C. NELSON,

        Plaintiff-Respondent/
        Cross-Appellant,

v.

ELIZABETH BOARD OF
EDUCATION,

        Defendant-Appellant/
        Cross-Respondent.

_____

> **APPROVED FOR PUBLICATION**
> **January 26, 2021**
> **APPELLATE DIVISION**

Argued November 10, 2020 – Decided  January 26, 2021

Before Judges Yannotti, Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1377-17.

Leslie F. Prentice argued the cause for appellant/cross-respondent (Adams, Gutierrez & Lattiboudere, LLC, attorneys; John E. Croot, of counsel and on the briefs; Leslie F. Prentice, on the briefs).

Timothy M. Donohue argued the cause for respondent/cross-appellant (Arleo & Donohue, LLC, attorneys; Timothy M. Donohue, on the briefs).

The opinion of the court was delivered by

NATALI, J.A.D.

After a non-jury trial, the Law Division entered final judgment in the amount of $260,026.88 in favor of plaintiff Kirk C. Nelson (Nelson) representing his net lost wages caused by defendant Elizabeth Board of Education's (Board) breach of the parties' employment agreement. The trial court rejected the Board's argument that the Rules of Professional Conduct (RPC) permitted it to fire Nelson, its former in-house counsel, without consequence in light of the agreement's clear and unambiguous provision that he was dischargeable only for cause. Nelson cross-appeals contending that the court incorrectly: 1) failed to award damages for the value of his medical and dental benefits, 2) mitigated the damages award, and 3) denied his request for pre-judgment interest.

We affirm in part and reverse in part. We agree that the Board improperly terminated Nelson contrary to the express terms of the agreement. Under the circumstances presented, nothing in the text of the RPCs, or applicable case law, supported the Board's decision to breach the agreement, convert Nelson to an at-will employee, and insulate itself from proximately caused damages.

We also reject plaintiff's challenge to the damages award as it was amply supported by the record. We conclude, however, that the court's decision to deny plaintiff's request for pre-judgment interest was an abuse of discretion,

and therefore remand for the court to calculate the appropriate amount of pre-judgment interest.

## I.

Nelson has been a licensed attorney in the State of New Jersey since 1998. In 2003 and 2004, he worked for the Board as its outside counsel without an employment agreement after he responded to a request for proposal (RFP). In 2005, the Board hired Nelson as its general counsel after he responded to a separate RFP. Again, the parties did not enter in an employment contract.

In 2009, the Board hired Nelson to a full-time, salaried in-house position as board counsel and the parties executed a one-year employment contract which was renewed annually through June 2012. In 2011 and 2012, the Board was served with several state and federal grand jury subpoenas related to its administration of the National School Lunch Program and other investigations which led to the filing of criminal charges against several Board members, including its president.

Nelson testified that in light of the criminal proceedings, District Superintendent Pablo Munoz (Superintendent Munoz) discussed with him the possibility of executing a three-year employment contract to ensure "stability in the back offices." During the subsequent contract negotiations, the Board

3

was represented by counsel. Nelson represented himself during the negotiations.

The parties ultimately executed a three-year employment agreement naming Nelson as board counsel for an "annual salary of $175,000, with annual increases of [two and a half percent]." Nelson testified that he agreed to the three-year contract in part because it provided him with employment security and further explained that he "essentially shut . . . down" his private practice after he signed the agreement.

The agreement provided that the Board could not terminate Nelson prior to the three-year term other than for cause defined as "the occurrence or existence" of:

> A) a material breach of your obligations under this agreement including, without limitation, refusal or failure to comply with reasonable directions communicated to you in writing by the Board, which material breach you fail to cure within fifteen calendar days of your receipt of notice of such breach;
>
> B) conviction of a felony or a crime involving moral turpitude; and
>
> C) gross negligence or intentional misconduct in the performance of your duties under this agreement.

In April 2013, Nelson was arrested in connection with the ongoing investigation into the Board's administration of the National School Lunch Program. Nelson testified that the arrest stemmed from his failure to produce a

single responsive document out of approximately "one million" documents requested in multiple subpoenas. Nelson promptly notified Superintendent Munoz about his arrest and he was subsequently placed on paid administrative leave pending a formal investigation. On December 9, 2013, Nelson was indicted for one count of conspiracy, two counts of official misconduct, one count of tampering with public records or information, one count of tampering with or fabricating physical evidence, and one count of hindering apprehension or prosecution.

On January 8, 2014, Nelson was notified in a two-line letter sent by the Board's new superintendent, Olga Hugelmeyer, that "[a]t a meeting of the Board of Education held on Monday, December 23, 2013, the Board approved your termination from the position [of] Board Counsel effective immediately." At the time, Nelson had eighteen months remaining on his employment contract with the Board entitling him to $273,546.88 in salary.

After he was fired, Nelson was unable to find legal employment of any kind. At one point, he was offered a management position at a local hospital, but the position was rescinded after a criminal background check. Nelson also unsuccessfully attempted to obtain employment at FedEx, UPS, Uber, and various construction jobs. In 2015, Nelson was hired through a prisoner reentry program to work overnights cleaning "vent hoods, grease traps and . . .

grease exhaust hoods." He testified that he worked for approximately six months, forty hours a week, and earned $13 per hour.

After a six-week jury trial, defendant was acquitted of all charges in the indictment. During the criminal trial, Nelson provided testimony regarding the underlying facts that resulted in his failure to comply with the subpoena. Nelson stated that when he was notified that a document had not been produced, he consulted with outside counsel that handled the Board's subpoena compliance. After speaking with outside counsel, Nelson believed that the missing document was produced electronically.

Nelson filed a two-count complaint against the Board asserting claims of breach of contract and promissory estoppel. After the motion court denied the Board's motion to dismiss the complaint pursuant to Rule 4:6-2(e), it filed a motion for summary judgment arguing that Nelson's claims were "subject to dismissal as a matter of law because the three-year term of his [c]ontract is in conflict with the Rules of Professional Conduct . . . ."

Nelson opposed the Board's motion and cross-moved for partial summary judgment on his breach of contract claim. The motion judge issued a January 7, 2019 order denying the Board's motion and partially granting Nelson's cross-motion. Although the motion court concluded that the parties

6

entered a "valid, enforceable contract," it denied Nelson's motion to the extent it sought a pretrial determination that the Board breached the agreement.

In its accompanying written decision, the motion court reasoned that the Board "may have been free to discharge Nelson . . . [but] the [RPCs] do not provide immunity for [the Board] from a breach of contract claim, or the damages stemming from said breach." The motion judge further determined that because there was an enforceable contract, it did not need to "address whether Nelson [could] recover under a promissory estoppel theory, as the issue [was] moot." We denied the Board's motion for leave to appeal the January 7, 2019 order.

Following a two-day bench trial, the trial court concluded that Nelson had "proven by a preponderance of the credible evidence that the [Board] did breach the employment contract." In its accompanying oral decision, the trial court found that "[t]he contract specifically stated that [Nelson] could be terminated only for . . . cause as defined in the contract." The trial judge further noted that cause was defined as a "conviction of a felony . . . for a crime involving moral turpitude or gross negligence or intentional misconduct in the performance of [Nelson's] duties under the agreement."

The trial court determined that Nelson's indictment did not establish a breach of the agreement as the "[g]rand [j]ury's return of an indictment does

not establish the charges set forth."  The trial judge also concluded that "not only is there no evidence of a criminal conviction, but also there's no evidence put forth that . . . [Nelson] committed gross negligence or intentional misconduct."

The trial court also found that Nelson established "by a preponderance of the evidence that he suffered damages as a result of the breach of contract by the [Board]" and awarded Nelson $260,026.88, representing the net lost wages for the eighteen months remaining on the agreement.  In determining that amount, the trial court rejected Nelson's claim for the cost of medical and dental benefits as he failed to submit evidence that he incurred any out of pocket medical or dental expenses.  Finally, the trial judge rejected Nelson's request for prejudgment interest concluding that although the Board breached the employment agreement, Nelson "was indicted on various serious criminal offenses" and therefore had failed to prove "an exceptional circumstance" warranting an award of prejudgment interest.

II.

On appeal, the Board raises two primary arguments.[1]  First, it asserts that the trial court incorrectly determined that the parties entered an enforceable

---

[1] The Board also asserts that the trial judge misapplied the law of the case doctrine when he relied on the motion court's finding that there was an enforceable contract between the parties.  Because we have concluded that the

contract. Relying on Cohen v. Radio-Electronics Officers Union, Dist. 3, 146 N.J. 140 (1996), the Board contends that the agreement was unenforceable as a matter of law as it conflicts with its ability to discharge counsel under RPC 1.16(a)(3). The Board further relies on Coyle v. Board of Chosen Freeholders, 170 N.J. 260 (2002), and Taylor v. Board of Education, 187 N.J. Super. 546 (App. Div. 1983), for the proposition that RPC 1.16(a)(3) permitted it to terminate its counsel in all circumstances except those involving a party who was appointed pursuant to a "statutory term of appointment," a circumstance inapplicable to Nelson's employment.

Second, the Board asserts that under the "modern rule," Nelson is not entitled to contract damages and can only recover any incurred losses under a quantum meruit theory. The Board further maintains that Nelson cannot recover damages without "specific legislative entitlement," and that N.J.A.C. 6A:23A-5.2(a)(4)[2] precludes an award of damages. We disagree with all these arguments.

---

motion court correctly decided that issue, we need not address the Board's argument.

[2] N.J.A.C. 6A:23A-5.2(a)(4) provides that "[e]ach district board of education of a school district . . . shall establish by polic[ies] . . . to minimize the cost of public relations as defined in N.J.A.C. 6A:23A-9.3(c), and professional services." The regulation further provides that all legal contracts shall include a provision that prohibits advance payments and permits those only for "legal services actually provided." Ibid.

Because the Board appeals a final order, we also address the motion court's January 7, 2019 order that the parties entered an enforceable employment agreement. See Daly v. High Bridge Teachers' Ass'n, 242 N.J. Super. 12, 15 (App. Div. 1990) (noting that "ordinarily a final order of disposition adverse to a party renders appealable as of right all interlocutory orders previously entered which are also adverse to that litigant").

"An appellate court reviews an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We "review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida v. Nat'l Union Fire Ins., 224 N.J. 189, 199 (2016).

We further review a "trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). Moreover, "we do not disturb the factual findings and legal

conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence so as to offend the interests of justice[.]" Ibid. (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)) (alteration in original).

Applying these standards of review, we first address the relevant legal principles related to the Board's argument that the agreement is unenforceable as inconsistent with RPC 1.16(a)(3). We next consider whether the Board breached the agreement, and if Nelson is entitled to damages. Finally, we resolve the arguments raised by Nelson's cross appeal.

RPC 1.16(a)(3) provides that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged." RPC 1.16(a)(3) is consistent with the principle that "[a] client may always discharge a lawyer, regardless of cause and regardless of any agreement between them. A client is not forced to entrust matters to an unwanted lawyer." Cohen, 146 N.J. at 157 (quoting Restatement of the Law Governing Lawyers § 44 cmt. b (Am. Law Inst. Proposed Final Draft No.1 1996)).

The RPCs, however, do not address the precise issue before us: whether a discharged in-house counsel like Nelson, who does not seek reinstatement to

his former position, is precluded from pursuing damages stemming from his employer's breach of contract.  Courts and treatises that have considered the issue, however, have concluded that an in-house counsel is not precluded from recovering proximately caused contract damages.

For example, in <u>Nordling v. Northern State Power Co.</u>, the plaintiff, an in-house attorney, filed a breach of contract action after he was fired by the defendant contrary to the terms of an employee handbook.  478 N.W.2d 498, 501-503 (Minn. 1991).  The Minnesota Supreme Court concluded that "in-house counsel should not be precluded from maintaining an action for breach of a contractual provision in an employee handbook, provided, however, that the essentials of the attorney-client relationship are not compromised."  <u>Id.</u> at 502.  The court noted that traditionally a discharged "attorney is entitled to recover in only quantum meruit for services rendered to the time of discharge and is not entitled to breach of contract damages."  <u>Id.</u> at 501.  The court explained, however, that "this quantum meruit remedy . . . is of no solace to discharged in-house counsel."  <u>Ibid.</u>

The court further explained that the quantum meruit remedy "evolved at a time when lawyers tended to be private practitioners self-employed in a more or less general practice."  <u>Ibid.</u>  The court found significant that the plaintiff was not "seeking to foist himself upon an unwilling client" in contrast to RPC

1.16 but only seeking monetary damages "for the breach of his contractual rights." Id. at 503.

In addition, the Washington Supreme Court recently held that "in the narrow context of in-house attorneys, contract and wrongful discharge suits are available, provided these suits can be brought 'without violence to the integrity of the attorney-client relationship.'" Karstetter v. King Cnty. Corr. Guild, 444 P.3d 1185, 1191 (Wash. 2019) (quoting Nordling, 478 N.W.2d at 502). In Karstetter, the plaintiff worked for the defendant under "successive [five]-year contracts that provided just cause termination." Id. at 1187. The plaintiff was then discharged without cause and subsequently filed a suit against the defendant alleging "breach of contract and wrongful discharge in violation of public policy." Id. at 1188. In response, the defendant argued that "to protect individual clients and the public generally, RPC 1.16 applies to all attorneys without exception." Ibid.

Significantly, the court noted that "[i]mmunizing an employer in this situation from all consequences ignores the realities of modern legal work and risks creating unconscionable results." Id. at 1190. Moreover, the court stated that "[w]e will not instruct in-house attorneys that our ethical rules allow employers to take away their livelihood and then also leave them without any legal recourse . . . ." Ibid.; see also Chyten v. Lawrence & Howell Invs., 46

Cal. Rptr. 2d 459, 462 (Ct. App. 1993) (holding that discharged in-house counsel was "entitled to enforce the termination provisions of the parties' negotiated employment contract").

The Restatement (Third) of the Law Governing Lawyers (Restatement) also recognizes that a "lawyer-employee also has the same rights as other employees under applicable law to recover for bad-faith discharge . . . ." Restatement (Third) of the Law Governing Lawyers, § 32 cmt. b (Am. Law. Inst. 2000). Further, the Restatement provides that "[b]ecause of the importance of . . . a lawyer's role in assuring [legal] compliance, the public policy that supports a remedy for such discharges is at least as strong in the case of lawyers as it is for other employees." Ibid. The Restatement explains that permitting an in-house lawyer a contract remedy is necessary because "[t]he power a client employer possesses over a lawyer-employee is substantial, compared to that of a client over an independent lawyer" and that permitting counsel "a remedy for wrongful discharge does not significantly impair the client's choice of counsel." Ibid.; see also Parker v. M & T Chems., 236 N.J. Super. 451, 460 (App. Div. 1989) (allowing discharged in-house counsel to maintain a claim for monetary damages under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8).

14

Here, both the motion and trial judges correctly concluded that the parties entered an enforceable contract that was not vitiated by RPC 1.16(a)(3). Nelson never sought reinstatement to his former position, he simply sought compensation for the Board's clear breach of the agreement. Nothing in that limited remedy impaired the Board's inherent right to hire and fire Nelson, it simply was required to answer, like any party, for the consequences of that breach. Nordling, 478 N.W.2d at 503.

To conclude otherwise would effectively eviscerate an in-house counsel's basic contract rights. Indeed, arms-length negotiated employment contracts, like the agreement here, would be rendered illusory, as an employer would be permitted to fire counsel without cause and ramification, effectively converting in-house lawyers with employment agreements to at-will employees contrary to New Jersey law.

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." Wade v. Kessler Inst., 172 N.J. 327, 338 (2002) (quoting Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397 (1994)). Indeed, absent an employment agreement "providing otherwise" an employer may "terminat[e] the

15

employment of at-will employees for cause or for no cause." Shebar v. Sanyo Bus. Sys. Corp, 111 N.J. 276, 285 (1988). An "express employment contract serves to create an other than at-will employment relationship." Jackson v. Ga. Pac. Corp., 296 N.J. Super. 1, 11 (App. Div. 1996).

We reject defendant's reliance on Cohen as that case is legally and factually distinguishable. In Cohen, the plaintiff entered a retainer agreement that provided for $100,000 in yearly compensation and renewed annually absent written notice between "six and seven months . . . after the anniversary date, or January 1." 146 N.J. at 149. The defendant discharged the plaintiff prior to the agreed upon notice of termination date. Id. at 150. In response, the plaintiff sued for $100,000, "claiming that the [a]greement had been automatically renewed . . . ." Ibid. The Court found that the renewal provision "excessively burden[ed] the [defendant's] right to hire and discharge [the plaintiff]." Id. at 160. The Court reasoned that "the burden on the [defendant's] right to discharge [the plaintiff] arises because of the combined effect of the provisions for notice and automatic renewal." Id. at 159. The Court permitted the plaintiff, however, to recover damages in quantum meruit under the modern rule "for the reasonable value of the services provided." Id. at 164.

A-4580-18T3

Nelson was not an outside lawyer compensated pursuant to a retainer agreement, rather, he worked for the Board exclusively pursuant to a three-year employment agreement. Nordling, 478 N.W.2d at 502 (noting that in-house counsel differs from "the traditional scenario of the self-employed attorney representing a client"). Unlike the retainer agreement in Cohen, there is no provision in the agreement that limited the Board's ability to terminate Nelson or "entrust matters to an unwanted lawyer." Cohen, 146 N.J. at 157. In addition, although the Cohen court found that the retainer agreement impaired the defendant's right to discharge an attorney, it still allowed the plaintiff to recover damages in quantum meruit, an equitable remedy that effectively made the lawyer in that case whole. Id. at 164.

Here, no such remedy is available to Nelson. Indeed, because the Board breached the agreement prior to the end of the term, a quantum meruit remedy would be a Pyrrhic victory of no "solace." Nordling, 478 N.W.2d at 501. Because Nelson's only practical remedy was to seek damages for breach of contract, the payment of which having no impact on the attorney-client relationship, we decline to extend Cohen, as the Board's requests, to the circumstances presented in this matter.

We further find the Board's reliance on Coyle for the proposition that the only exception to RPC 1.16(a)(3) is for "public counsel for whom the

17

Legislature has specifically carved out a statutory term of appointment" misplaced. In Coyle, the plaintiff was appointed to a three-year term as county counsel pursuant to N.J.S.A. 40A:9-43. 170 N.J. at 262. Prior to the completion of his term, the plaintiff was removed from the position and filed a complaint seeking a "judgment declaring him to be county counsel." Ibid. The court found that the removal was improper, and that RPC 1.16(a)(3) "never was intended to apply to public counsel with statutory terms . . . ." Id. at 268.

Accordingly, an attorney appointed to a public counsel position with a statutory term cannot be removed from office prior to the expiration of that term pursuant to RPC 1.16(a)(3). Ibid. That rule, however, does not limit Nelson's remedy here. Again, Nelson sought monetary damages, not reinstatement to his prior position, which would directly contravene the principles underlying RPC 1.16(a)(3).

Nor does Taylor support the Board's position. In Taylor, the plaintiff was discharged from his position as board counsel. 187 N.J. Super. at 551. Plaintiff subsequently filed suit claiming he was entitled to "veteran's tenure as school board attorney under N.J.S.A. 38:16-1 . . . ." Ibid. The court denied plaintiff's request and held that "N.J.S.A. 38:16-1 does not govern the attorney-client relationship" and "must give way to the [RPC]." Id. at 561.

Unlike the plaintiff in <u>Taylor</u>, however, Nelson agreed to a fixed term of employment and does not seek tenure rights for his position as board counsel. Indeed, Nelson only seeks the remainder of his salary under the parties' employment contract.

We also disagree with the Board's argument that N.J.A.C. 6A:23A-5.2 precludes the Board from compensating Nelson for its breach of the agreement. As noted, N.J.A.C. 6A:23A-5.2 requires that each board district establish a policy "to minimize the cost of . . . professional services" and to incorporate in that policy a "provision that requires contracts for legal services to comply with payment requirements" including the prohibition of advanced payments and limiting payments for legal services to those actually provided.

N.J.A.C. 6A:23A-5.2 was promulgated to ensure accountability in districts when drafting cost-effective policies, not to immunize boards from damages proximately caused by their clear and undisputed breaches of contract. Here, the only reason Nelson failed to "provide" the legal services was because of defendant's breach.

III.

Considering our conclusion that an enforceable contract exists between the parties, we next address the Board's challenge to the trial court's damages award. Specifically, the Board argues that under the modern rule, a discharged

A-4580-18T3

attorney can only recover in quantum meruit and that as public counsel, Nelson was not entitled to "recover damages without a specific legislative entitlement." For the reasons previously stated, we reject the Board's arguments and analyze the parties' agreement under traditional contract law principles.

To establish a claim for breach of contract, a plaintiff must provide proof of "a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and a breach causing the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Envtl. Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015) (citing Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007)). Accordingly, a breaching party "is liable for all of the natural and probable consequences of the breach of that contract." Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., 191 N.J. 1, 13 (2007) (quoting Pickett v. Lloyd's, 131 N.J. 457, 474 (1993)). The goal in awarding damages is "to put the injured party in as good a position as . . . if performance had been rendered." Ibid. (quoting Donavan v. Bachstadt, 91 N.J. 434, 444 (1982)). In addition, the damages "must be a reasonably certain consequence of the breach although the exact amount of the loss need not be certain." Donavan, 91 N.J. at 445.

20                                                                    A-4580-18T3

We conclude that the trial court correctly found, based on sufficient, credible evidence in the record, that the Board breached its employment contract with Nelson resulting in $260,026.88 in proximately caused damages. D'Agostino, 216 N.J. at 182.  Indeed, based on the record before us, it does not appear the Board conducted any investigation regarding Nelson's conduct before terminating him, instead basing its decision solely on the fact that he was indicted.

Nelson could be terminated, however, only for cause defined as gross negligence, an uncured material breach, a conviction of a felony, or a crime involving moral turpitude.  Although indicted, Nelson was not convicted of any crime, never materially breached his obligations, and did not commit gross negligence or intentional misconduct.  The Board was therefore liable "for all of the natural and probable consequences of the breach of that contract."  See Totaro, 191 N.J. at 13.

IV.

In Nelson's cross-appeal he asserts that the trial court failed to award damages for the value of his medical and dental benefits, improperly reduced the damages award, and abused its discretion when it denied his request for pre-judgment interest.  We disagree with all these arguments except for the trial judge's decision denying Nelson's application for prejudgment interest.

The trial court correctly rejected Nelson's request for the costs the Board paid for his medical and dental benefits because he had not "submitted any amounts paid . . . to medical or dental providers [based on his lack of] insurance . . . ." In other words, Nelson failed to establish that he sustained direct or consequential damages as a result of being uninsured during the eighteen months remaining on the agreement. Totaro, 191 N.J. at 13.

The trial court also correctly reduced Nelson's award by the $13,520 he earned while employed through the prisoner reentry program. Without citation to any legal authority, Nelson claims that his employment in the prisoner reentry program "should not benefit the Board." Nelson further argues that the Board did not specifically prove the amount of wages he earned from the reentry program. We disagree.

"It is well settled that injured parties have a duty to take reasonable steps to mitigate damages." McDonald v. Mianecki, 79 N.J. 275, 299 (1979). Moreover, "the burden of proving facts in mitigation of damages rests with the defendant[]." Roselle v. La Fera Contracting Co., 18 N.J. Super. 19, 28 (Ch. Div. 1952).

At trial, Nelson testified that he worked at the prisoner reentry program for approximately six months, forty hours a week, for $13 an hour. Therefore,

the trial judge properly calculated and mitigated Nelson's damages in the amount of $13,520.

Nelson next contends that he was entitled to prejudgment interest to "fully compensate [him] for the loss of salary and benefits." "[T]he award of prejudgment interest on contract and equitable claims is based on equitable principles." Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006). Accordingly, the award of prejudgment interest and the rate at which prejudgment interest is calculated is within the sound discretion of the trial court. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 390 (2009); see also Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (explaining that a decision is an abuse of discretion when it is made "without a rational explanation") (citation omitted). In deciding to award prejudgment interest, the courts primary consideration is whether:

> the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.
>
> [Rova Farms Resort, Inc. v. Invs. Ins., 65 N.J. 474, 506 (1974).]

Further, when a party seeks prejudgment interest against a government entity, "and interest in the cause is not provided for by statute, particular

circumspection in the granting of pre-judgment interest is required and a showing of overriding and compelling equitable reasons must be made in order to justify the award." Bd. of Educ. v. Levitt, 197 N.J. Super. 239, 244 (App. Div. 1984); Emerick v. Teaneck Bd. of Ed., 221 N.J. Super. 456, 464 (App. Div. 1987) (noting that the defendant had use of plaintiff's money in its decision to uphold an award of prejudgment interest). In addition, "[a]bsent . . . unusual circumstances the prejudgment interest rate should be the same as that provided for by the rule governing postjudgment interest." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 4:42-11 (2020) (citing Benevenga v. Digregorio, 325 N.J. Super. 27, 34 (App. Div. 1999)).

Here, it is undisputed that the Board's actions prevented Nelson from the use of $260,026.88. The fact that defendant was indicted for serious offenses is an insufficient basis to preclude an award of prejudgment interest as it effectively punishes Nelson for crimes he never committed and inequitably rewards the Board for its breach of the agreement.

In sum, we conclude that the trial court's $260,026.88 final judgment is supported by sufficient credible evidence, in accordance with applicable law, and therefore unassailable. D'Agostino, 216 N.J. at 182. We remand, however, solely for the trial court to calculate the appropriate amount of prejudgment interest. To the extent we have not addressed any of the parties'

remaining arguments it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for calculation of the appropriate amount of prejudgment interest and entry of an amended judgment. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION